**MADISON SQUARE GARDEN BOXING, INC., Plaintiff-Appellee,**

v.

**Earnie SHAVERS, Defendant,**

**Top Rank, Inc., Proposed Intervenor-Appellant.**

Nos. 1538, 1556, 1557 and 1559, Dockets 77–7348, 7353, 7400 and 7401.

United States Court of Appeals, Second Circuit.

Argued Aug. 15, 1977.

Decided Aug. 19, 1977.

---

Theodore H. Friedman, New York City (Arum, Friedman & Katz, David G. Miller, Klari Neuwelt, Daniel A. Ruzow, New York City, of counsel), for appellant Top Rank, Inc.

John A. Guzzetta, New York City (Simpson Thacher & Bartlett, Barry R. Ostrager, Dennis G. Jacobs, New York City, of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND and WEBSTER,* Circuit Judges, and DOOLING,** District Judge.

VAN GRAAFEILAND, Circuit Judge:

Muhammad Ali and Earnie Shavers, two well-known pugilists, are scheduled to fight for the heavyweight championship of the world on September 29, 1977. A preliminary bout between the would-be promoters of this event is presently taking place. Madison Square Garden Boxing, Inc. (MSG) and Top Rank, Inc., each of whom claims to have an exclusive promotional contract with Shavers, are now in the sixth round of an imbroglio which bids fair to outdo the main event. For those who missed the earlier rounds, a brief review of what has transpired to date will be helpful.

In the Spring of 1977, MSG, which had an option contract with Ali for a heavyweight title fight, undertook to secure Shavers as Ali's opponent. On May 16, Shavers' manager sent MSG a telegram indicating his conditional acceptance of MSG's suggested terms. A proposed letter agreement was then sent by MSG to Shavers, the terms of which differed from those of the telegram in several respects. Oral discussions followed; and Shavers, apparently concluding that an agreement would not be reached with MSG, signed a contract to fight for Top Rank. MSG felt, on the other hand, that an agreement had been consummated between it and Shavers prior to the execution of the Top Rank contract. With these conflicting views, the parties entered the legal arena.

The first action was by Top Rank, which commenced an Article 78 proceeding in New York State Supreme Court on June 10 seeking to restrain the New York State Athletic Commission from making a deter-

---

* Of the U.S. Court of Appeals (8th Cir.), sitting by designation.

** Of the Eastern District of New York, sitting by designation.

mination as to the validity of the purported agreement between MSG and Shavers. By order dated June 30, 1977, Judge Sullivan of the State Supreme Court held that there was no binding contract between MSG and Shavers and vacated a decision by the Athletic Commission which held to the contrary.

In the meantime, on June 16, MSG commenced an action against Shavers in the United States District Court for the Southern District of New York seeking to enjoin him from participating in any boxing match until he fulfilled his alleged contractual obligations with MSG. An order was issued directing Shavers to show cause on June 22 why a preliminary injunction for this relief should not be granted. A hearing was held on June 23, and on June 24 the District Judge made an order preliminarily enjoining Shavers from fighting for any promoter other than MSG before October 11, 1977.[1] On the same day, Top Rank submitted an application to intervene in the action as an indispensable party which was denied by the District Court.[2] The District Judge found no basis for intervention as of right. He also held that the application was untimely and that Top Rank's interests were being adequately protected by Shavers. Shavers promptly appealed from the order granting a preliminary injunction, and Top Rank appealed from the order denying intervention.

On July 7, Top Rank commenced a new action against Shavers and MSG in New York State Supreme Court seeking a declaratory judgment as to the rights of all the parties and secured a temporary restraining order prohibiting MSG and Shavers from consummating their proposed agreement. On July 15, the District Court, in a proceeding brought by MSG against Judge Sullivan and Top Rank, enjoined the latter from enforcing the State Court's temporary restraining order on the ground that it would nullify the District Court's

preliminary injunction. Top Rank has appealed from this order of the District Court.

Thereafter, MSG sweetened the terms of its proposed contract with Shavers, and Shavers stipulated with MSG that a final judgment containing a permanent injunction might be entered against him and that his appeal was discontinued on the merits. Pursuant to this stipulation, a final judgment was entered in the District Court on July 20. MSG then moved to dismiss Top Rank's appeal from the order denying intervention on the ground of mootness.

■ MSG also moved in District Court to extend the scope of the July 15 injunction order, and on July 27, a second order issued from the District Court enjoining Top Rank from taking any steps to obtain injunctive relief in any court which would interfere with the contractual rights of MSG or would nullify the final judgment and permanent injunction granted on July 20. Once again, Top Rank appealed. By order of this Court, the three appeals were argued together, along with MSG's motion to dismiss.

The parties have briefed and argued at length the law covering the rights of a would-be intervenor. Because of the peculiar posture of this case, we see no reason to participate in this vigorous discussion. Whether rightly or wrongly, MSG contended that Top Rank had no right to intervene and prevailed in this position in the District Court. It then proceeded to settle its differences with Shavers, with the result that a final judgment containing a permanent injunction was entered by stipulation. Under the circumstances, this judgment had no binding effect whatever on Top Rank.

■ A judgment entered by consent and stipulation is binding upon the consenting parties only. *Raylite Electric Corp. v. Noma Electric Corp.,* 170 F.2d 914, 915 (2d Cir. 1948). Moreover, it is the general rule

---

1. A more detailed opinion and order followed on June 28.

2. The granting of Top Rank's motion to intervene as an indispensable party would have

deprived the District Court of jurisdiction because of lack of diversity between MSG and Top Rank. *Johnson v. Middleton,* 175 F.2d 535, 537 (7th Cir. 1949).

that no one can be bound by an in personam judgment in litigation in which he or his privy was not a party. *Hansberry v. Lee,* 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203–04 (2d Cir. 1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973). Whatever may have been the relationship between Shavers and Top Rank when the District Court denied the latter's application to intervene, they were obviously not in privity when Shavers stipulated with MSG for entry of judgment.

■ With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on any one. The preliminary injunction was by its very nature interlocutory, tentative and impermanent. *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir. 1953). The findings of fact made therein were not controlling on the ultimate issues, and the parties would have been free to retry these issues during the hearing on the merits leading to a final judgment. *Imperial Chemical Industries, Ltd. v. National Distillers & Chemical Corp.,* 354 F.2d 459, 463 (2d Cir. 1965). There is therefore no basis for enjoining Top Rank from seeking injunctive relief in the State Courts on the ground that such relief would nullify the terms of either the preliminary injunction or the final judgment. *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84, 94 (5th Cir. 1977).

A determination by the State Court that the contract between Shavers and Top Rank is binding and enforceable may possibly result in an injunction prohibiting Shavers from fighting for MSG, in which case the federal and state injunctions will offset each other and there will be no fight. That is, however, a determination to be made by the courts of New York, not by this Court. We hold simply that, under the posture of this case, the District Court erred in enjoining Top Rank from attempting to secure full relief in our sister court.

The appeal from the order denying Top Rank's application to intervene is dismissed as moot. The orders enjoining Top Rank from securing injunctive relief in the state courts are reversed. Costs are awarded to neither party.